**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

ROY ALAN O'GUINN,                )   3:09-cv-00684-RCJ (RAM)
                                 )
    Plaintiff,                   )   **REPORT AND RECOMMENDATION
                                 )   OF U.S. MAGISTRATE JUDGE**
vs.                              )
                                 )
SENIOR CORRECTIONAL              )
OFFICER TIMOTHY TOOKER, *et. al.* )
    Defendants.                  )
_____  )

       This Report and Recommendation is made to the Honorable Robert C. Jones, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Motion for Summary Judgment. (Doc. # 28.)[1] Also before the court is Plaintiff's Fed.R.Civ.P. 56(f) Motion. (Doc. # 38.) After a thorough review, the court recommends that Defendants' Motion for Summary Judgment (Doc. # 28) be granted, and Plaintiff's Fed.R.Civ.P. 56(f) Motion (Doc. # 38) be denied.

## I. BACKGROUND

       At all relevant times Plaintiff Roy Alan O'Guinn (Plaintiff) was an inmate in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Am. Compl. (Doc. # 17 ).) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC) and Nevada State Prison (NSP). (*Id.*) Plaintiff, a *pro se* litigant, brings this action

---

    [1]    Refers to the court's docket number.

pursuant to 42 U.S.C. § 1983. (*Id.*) Defendants are Senior Correctional Officer (SCO) Tooker, Disciplinary Hearing Officer (DHO) Arguello, and Warden Smith. (*Id.*)

In 2004, Plaintiff was charged with possession of a book that had been improperly altered, and was found guilty and disciplined for possession of contraband. (Defs.' Mot. for Summ. J. (Doc. # 28) 1-2, Ex. D, Doc. # 17 at 3.) After the disciplinary hearing, the altered book was stored in the LCC evidence vault. (Doc. # 28 at 2, Ex. A at ¶¶ 9-18, Doc. # 17 at 3.) In August 2009, SCO Tooker examined the book that had been stored in the evidence vault and discovered a crystalline substance in a cutout compartment which was tested and confirmed as methamphetamine. (Doc. # 28 at 2, Ex. A at ¶¶ 9-18, Doc. # 17 at 4.) SCO Tooker filed a notice of charges against Plaintiff for possession/sale of intoxicants. (Doc. # 28 at 2, Ex. E, Doc. # 17 at 4.)

A disciplinary hearing was scheduled at NSP, where Plaintiff had been transferred. (Doc. # 28 at 2, Ex. E, Doc. # 17 at 4.) Plaintiff's disciplinary hearing was conducted on October 6, 2009, by DHO Arguello. (Doc. # 28 at 2, Ex. E, Doc. # 17 at 7-9.) DHO Arguello found Plaintiff guilty of possession of intoxicants, and he was sanctioned eighteen months of disciplinary segregation and a 180 day statutory referral. (*Id.*) Plaintiff subsequently appealed the disciplinary charges to Warden Smith, who upheld the disciplinary conviction. (Doc. # 28 at 2, Doc. # 17 at 10-16.)

In Count I, Plaintiff alleges that SCO Tooker falsified evidence in bringing the notice of charges against him concerning the crystalline substance found in the book approximately five years after the original contraband charges. (Doc. # 17 at 4-6.) In Count II, Plaintiff asserts that DHO Arguello improperly conducted the disciplinary hearing against him, and refused his request for legal assistance. (*Id.* at 7-19.) In Count III, Plaintiff takes issue with Warden Smith's denial of Plaintiff's appeal of the disciplinary conviction. (*Id.* at 10-16.)

2

## II.  MOTION FOR SUMMARY JUDGMENT

**A.     LEGAL STANDARD**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*.

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went

3

uncontroverted at trial.' In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)(citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(citation omitted). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is

4

not significantly probative, summary judgment may be granted. *Id*. at 249-50, 255 (citations omitted).

**B.   DISCUSSION**

   **1. Preliminary Matters**

First, in his opposition, Plaintiff asks the court to restart case 3:09-cv-622 and requests that he be sent the in forma pauperis documentation. (Doc. # 33 at 12.) Case 3:09-cv-622 is not before this court, and therefore this is an improper request.

Second, Plaintiff has filed what is essentially a supplement to his opposition. (*See* Doc. # 45.) Defendants have filed a Motion to Strike the supplement. (Doc. # 46.) Defendants are correct that Plaintiff improperly attempts to supplement his opposition with additional case law and argument not set forth in his prior submissions. Local Rule (LR) 7-2 allows a party to serve an opposition in response to a motion, and does not permit a party to file a supplemental brief without leave of court. Doc. # 45 is a fugitive document filed in direct contravention of LR 7-2. Therefore, Defendants' Motion to Strike (Doc. # 46) is granted and Doc. # 45 will not be considered by the court.

   **2. The Disciplinary Determination Is Supported by "Some Evidence"**

With respect to Count I, Defendants argue that some evidence existed to support a finding that Plaintiff was guilty of the charge of possession of narcotics, and Plaintiff has no constitutional claim concerning his allegation that SCO Tooker falsified evidence leading to the notice of charges. (Doc. # 28 at 5-6.)

Plaintiff argues Defendant Tooker falsified the 2009 charge against him, because he knew that Plaintiff had not had contact with the book since 2004, and Defendants would have known about the crystalline substance when the book was confiscated in 2004. (Doc. # 33 at 3-5, 8, 13, 29.) In addition, Plaintiff claims he did not put the substance in the book. (*Id*. at 8.)

As to Count II, Defendants argue that there was sufficient evidence to convict Plaintiff of the charges at the disciplinary hearing conducted by DHO Arguello, as set forth above.

5

(Doc. # 28 at 7.) In addition, Defendants argue that Plaintiff was not deprived of any liberty interest as a result of his punishment, and in any event, was given all of the process he was due. (*Id.* at 8.)

Plaintiff concedes that DHO Arguello listened to his statement in the disciplinary hearing, but argues that she did not care and had predetermined him to be guilty. (Doc. # 33 at 2-3.) He also implies that DHO Arguello did not consider the papers related to the 2004 disciplinary charges and conviction in concluding that he should be convicted of the 2009 charges. (*Id.*) Plaintiff argues that a liberty interest was implicated. He acknowledges that the sanctions were reduced, but complains that the charge will still go into his prison files, which will cause him trouble within NDOC. (*Id.* at 11.) Plaintiff further argues that DHO Arguello should not have held the disciplinary hearing because she should have known that he did not put the substance in the book. (*Id.* at 12-13.)

The Fourteenth Amendment provides, "[n]o State shall...deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To invoke its protections, an inmate must establish that one of these interests is at stake. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). In the prison context, the implicated interests generally pertain to liberty. In analyzing the procedural safeguards owed to an inmate under the due process clause, the court considers two elements: (1) whether the inmate suffered a deprivation of a constitutionally protected liberty interest, and (2) whether the inmate suffered a denial of adequate procedural protections. *Biggs v. Terhune*, 334 F.3d 910, 913 (9th Cir. 2003) (citations omitted), *overruled on other grounds in Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010).

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,'...or it may arise from an expectation or interest created by state laws or policies[.]" *Wilkinson*, 545 U.S. at 221 (internal citations omitted).

First, under the Constitution itself, a liberty interest is implicated when the conditions of confinement "[exceed] the sentence in such an unexpected manner as to give rise to

protection by the Due Process Clause of its own force." *Mitchell v. Dupnik*, 75 F.3d 517, 523 (9th Cir. 1996) (citation omitted). Examples of conditions which may qualify are transfer from a prison to a mental facility and the forceful administration of psychotropic drugs. *See Sandin*, 515 U.S. at 484 (citing *Vitek v. Jones*, 445 U.S. 480 (1980) and *Washington v. Harper*, 494 U.S. 210 (1990)).

Second, liberty interests created by the state are generally limited to freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

"[T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citations omitted). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* (citation omitted). In other words, while "a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime," *id.* at 555, his interest in due process "must be accommodated in the distinctive setting of a prison" in order to "[assure] the safety of inmates and prisoners, [avoid] burdensome administrative requirements that might be susceptible to manipulation, and [preserve] the disciplinary process as a means of rehabilitation." *Superintendent, Massachusetts Correctional Institution, Wapole v. Hill*, 472 U.S. 445, 454-55 (1984) (citations omitted).

It is well settled that when a prison disciplinary proceeding implicates a liberty interest, due process requires the prisoner receive: (1) written notice of charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may hear his defense; (3) a written statement by the hearing officer of the evidence relied upon and the reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to

1  institutional safety or correctional goals; and (5) legal assistance to the prisoner where the
2  prisoner is illiterate or the issues presented are legally complex. *Wolff*, 418 U.S. at 556.

3   In addition, the Supreme Court has held that due process requires that a disciplinary
4  decision be supported by "some evidence." *Hill*, 472 U.S. at 454-55 (citations omitted). The
5  Ninth Circuit has likewise recognized the applicability of the "some evidence" standard in a
6  disciplinary hearing. *See Cato v. Rushen*, 824 F.2d 703, 704-05 (9th Cir. 1987) (applying
7  "some evidence" standard where Plaintiff alleged that placement in administrative segregation
8  violated his due process rights, and recognizing that the *Hill* standard is "minimally
9  stringent").

10  *Hill* involved the revocation of good time credits following a disciplinary hearing, and
11  the Supreme Court held that a disciplinary decision should be affirmed if there is "some
12  evidence" to support the determination. *Hill*, 472 U.S. at 445. There, the Supreme Court
13  stated, "[a]scertaining whether this standard is satisfied does not require examination of the
14  entire record, independent assessment of the credibility of witnesses, or weighing of the
15  evidence. Instead, the relevant question is whether there is *any* evidence in the record that
16  *could* support the conclusion reached by the disciplinary board." *Id.* at 455-56 (citations
17  omitted) (emphasis added). The Court declined to adopted a more stringent standard,
18  reasoning, "[p]rison disciplinary proceedings take place in a highly charged atmosphere, and
19  prison administrators must often act swiftly on the basis of evidence that might be insufficient
20  in less exigent circumstances." *Id.* at 456 (citation omitted). The Court recognized, "[t]he
21  fundamental fairness guaranteed by the Due Process Clause does not require courts to set
22  aside decisions of prison administrators that have some basis in fact." *Id.* The Court found
23  that the evidence in *Hill* met the "some evidence" standard, noting that the disciplinary panel
24  had received testimony from a prison guard and copies of a written report. *Id.* at 456. In
25  coming to this conclusion, the Court explained:

> The Federal Constitution does not require evidence that logically precludes any
> conclusion but the one reached by the disciplinary board. Instead, due process
> in this context requires only that there be some evidence to support the findings
> made in the disciplinary hearing. Although the evidence in this case might be

8

considered as meager, and there was no direct evidence identifying anyone of three inmates as the assailant, the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. *Id.* at 457.

Here, the parties dispute whether a liberty interest was implicated. The court need not consider this issue because even assuming that Plaintiff was deprived of a protected liberty interest, the court finds Plaintiff was given all the process he was due and the DHO Arguello's determination was supported by "some evidence."

The transcript of the disciplinary hearing reveals DHO Arguello reviewed the notice of charges by SCO Tooker. (Doc. # 28 Ex. C at 2:12-14, 4:7-18.) DHO Arguello summarized the notice of charges in the record as follows:

> LIEUTENANT ARGUELLO: Okay. At approximately 9:00 o'clock on 8-26-09, Senior Correctional Officer Tooker discovered a crystalline substance that had been logged into the Lovelock Correctional Center evidence vault on August 5th of '04. The crystalline substance yielded a positive result on a narcotics identification kit, presumptive for methamphetamine. The crystalline substance was secreted inside a plastic bag inside a hidden compartment in a hardcover book. The book was confiscated from inmate O'Guinn, back number 67905, during a search of his property on August 5th of '04, and a constant chain of command has been maintained.

(Doc. # 28 Ex. C at 4:7-18.)

Following the recitation of the notice of charges brought by SCO Tooker, Plaintiff gave a statement as follows:

> MR. O'GUINN: Okay. There was-- there was-- there was nothing in that book except for a hole. And I went to Officer Peden in the unit. He came, and I told him - - he came to my cell. I told him I had a book that had a compartment in it.
> LIEUTENANT ARGUELLO: Officer who?
> MR. O'GUINN: Peden, P-E-D-E-N. Officer Peden.
> LIEUTENANT ARGUELLO: And told him?
> MR. O'GUINN: I told him that I had a book that I wanted to turn in because it had a hole in it. It was inside a book. (Indistinct.) Okay. (Indistinct) the hole in the book. And he wrote me up for MJ-26, having contraband.
> What Tooker is saying is a hidden compartment, has a big hole in the book. You could probably fit that - - that - - that cassette recorder right there in it. It was that big.
> LIEUTENANT ARGUELLO: Okay.
> MR. O'GUINN: This book was (indistinct) our property. Okay. And that I never ordered. Okay. You can't have property. Okay.
> LIEUTENANT ARGUELLO: You never ordered it?
> MR. O'GUINN: No.
> LIEUTENANT ARGUELLO: Okay.

9

MR. O'GUINN: Okay. Now, this, this, this, this, this, this book was taken by Peden, was examined by Peden and the investigative officers. And nothing was found in that book. If there was, I would have been charged with that MJ-53 back on 8-5 of '04 by the investigating officers, Peden, the shift sergeant and/or Warden Craig Farwell at this time. He did the summary on my disciplinary appeal, response to my disciplinary appeal.
LIEUTENANT ARGUELLO: Who did?
MR. O'GUINN: Craig Farwell, the warden.
If anything was in that book, I would have been charged back then, not -- not--
LIEUTENANT ARGUELLO: Okay.
MR. O'GUINN: Not five years later.
LIEUTENANT ARGUELLO: Okay. Craig Farwell did a what? Did a --
MR. O'GUINN: Oh, he -- he's the one that wrote up the disciplinary appeal.
LIEUTENANT ARGUELLO: Okay.
MR. O'GUINN: Am I talking too fast?
LIEUTENANT ARGUELLO: No.
MR. O'GUINN: Are you getting everything I said? Are you?
LIEUTENANT ARGUELLO: I'll read it back to you.
MR. O'GUINN: Okay.
LIEUTENANT ARGUELLO: Just keep going.
MR. O'GUINN: Okay. And, and five years later, five plus years later. Okay. This was planted, planted, not by me, but by some other person, that has access to that evidence vault at Lovelock, to purposely have me charged, to deliberately (indistinct) for acts of (indistinct) wrongful and arbitrarily- - arbitrary discriminatory acts.
And, also, on this there are disciplinary actions and restrictions (indistinct) have the last laugh, I guess.
LIEUTENANT ARGUELLO: Okay.
MR. O'GUINN: And I think, I think he should be-- he's-- he's doing this (indistinct).
LIEUTENANT ARGUELLO: Let's don't do the second one right now. We're sticking to the first. Okay. You can't combine both of them.
Anything else?
MR. O'GUINN: Uh, I can't think of anything else.
LIEUTENANT ARGUELLO: Pardon me?
MR. O'GUINN: I can't think of anything else.
LIEUTENANT ARGUELLO: Okay. I'm going to pause the tape, and I'm going to read it back to you.
\* \* \* \* \*
(Doc. # 28 Ex. C at 5:7-8:1-5.)

Based upon the evidence provided, the hearing officer concluded as follows:

LIEUTENANT ARGUELLO: ...I will tell you right here what I've decided, that after careful consideration and reviewing the notice of charges, inmate O'Guinn did please [sic] not guilty to MJ-53. He stated that he had sent this case to his attorney in Las Vegas, Snell & Wilmer, Mr. Chad Fears, to appeal the decision and charges of this particular case. I am finding inmate O'Guinn guilty, and he's being sanctioned to the minimum, which is 18 months disciplinary segregation and 180 days stat referral, unless the warden and attorneys state otherwise...
(Doc. # 28 Ex. C at 13:8-17.)

10

1    The court finds that DHO Arguello's disciplinary determination is supported by "some
2 evidence." Like *Hill*, there may not have been direct evidence that Plaintiff placed the
3 substance identified as methamphetamine in the book, but SCO Tooker's report states that
4 he discovered the substance in a book that had been logged into the LCC evidence vault on
5 August 5, 2004, after being confiscated from Plaintiff, and a constant chain of custody had
6 been maintained. This constitutes "some evidence" to support the conclusion reached by DHO
7 Arguello. The court is not tasked with looking at what other conclusions could have been
8 made according to all of the evidence presented. The court is only tasked with determining
9 whether the conclusion made at the disciplinary hearing is supported by "some evidence" in
10 the record. It is clear that the court is "not to make its own assessment of the credibility of
11 witnesses or reweigh the evidence." *Cato*, 824 F.2d at 705 (citing *Hill*, 472 U.S. at 455). The
12 fact that Plaintiff made statements in the record that he did not place the substance into the
13 book and that the substance would have been discovered in 2004 does not alter the conclusion
14 that the DHO Arguello's decision was supported by "some evidence."

15    To the extent Plaintiff asserts that SCO Tooker falsified evidence leading to the 2009
16 notice of charges, courts have held that prisoners do not have a constitutionally guaranteed
17 immunity from being falsely or wrongly accused of conduct which may result in the
18 deprivation of a protected liberty interest. *See Sprouse v. Babcock*, 870 F.2d 450, 452 (8th
19 Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 951-52 (2d. Cir. 1986), *cert. denied*, 485
20 U.S. 982 (1988) (allegation that false evidence was planted by a prison guard does not state
21 a constitutional claim where procedural process protections are provided); *see also York v.*
22 *Hernandez*, 2011 WL2650243, at * n. 3 (N.D. Cal. 2011) (where plaintiff alleged violation of
23 due process rights by filing false charges against him, court stated, "without more, a prisoner
24 has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct
25 which may result in the deprivation of a protected liberty interest."); *Tafilele v. Harrington*,
26 2011 WL2462750, at *7 (E.D. Cal. 2011). Rather, the Fourteenth Amendment provides that
27 a prisoner has a right not to be deprived of a protected liberty interest without due process of
28

11

1 law. *Sprouse*, 870 F.2d at 452. Thus, as long as a prisoner receives proper procedural due
2 process, a claim based on the falsity of disciplinary charges, standing alone, does not state a
3 constitutional claim. *Id.*; *see also Freeman*, 808 F.2d at 951; *Hanrahan v. Lane*, 747 F.2d
4 1137, 1140-41 (7th Cir. 1984). Here, while Plaintiff alleges that SCO Tooker falsified the
5 evidence against him, a disciplinary hearing was held and Plaintiff presented his version of
6 events. DHO Arguello presumably weighed the credibility of SCO Tooker's report and
7 Plaintiff's statement, and determined Plaintiff's guilt. Plaintiff has no constitutional claim
8 related to the alleged falsification of evidence by SCO Tooker.

9 Accordingly, summary judgment should be granted as to Plaintiff's claim against SCO
10 Tooker in Count I, and his claim concerning DHO Arguello's disciplinary determination in
11 Count II.

### 3. Legal Assistance

13 Defendants argue that Plaintiff's claim that he was denied the opportunity to obtain
14 legal assistance fails because: (1) he was offered legal assistance, but rejected this offer in lieu
15 of being represented by his own counsel (i*d*. at 8-12); (2) Plaintiff is not automatically entitled
16 to retained or appointed counsel for a disciplinary hearing (*id.* at 10); (3) Plaintiff was never
17 entitled to legal assistance because he is not illiterate, as evidenced by his filing of numerous
18 lawsuits and grievances (*id.* at 10-11); (4) the issue at the disciplinary hearing was not
19 complex, thereby requiring legal assistance (*Id.* at 11); and (5) he cannot show that anyone
20 providing legal assistance would have offered anything of value at the hearing (*id.*).

21 In *Wolff v. McDonnell*, the Supreme Court held that when inmates are illiterate or
22 faced with complex issues or are unable to collect and present evidence, they "should be free
23 to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the
24 form of help from the staff or from a sufficiently competent inmate designated by the staff."
25 *Wolff*, 418 U.S. at 570. However, inmates are not entitled to the aid of trained legal counsel.
26 *Id.* at 591-92, n. 2 (reasoning, "[t]here is considerable force to the argument that counsel on
27 either side would be out of place in these disciplinary proceedings, and the practical problems

12

of providing appointed counsel in these proceedings may well be insurmountable."); *see also Baxter v. Palmigiano*, 425 U.S. 308, 314-15 (1976) ; *Bostic v. Carlson*, 884 F.2d 1267 (9th Cir. 1989) ("There is no right to assistance of counsel in a prison disciplinary hearing.").

Here, Plaintiff does not allege that he was illiterate. Nor does he assert that the disciplinary proceeding was so complex as to require assistance. He does not even go so far as to argue that he needed assistance because he was unable to collect and present evidence. Moreover, Plaintiff was presented with the opportunity to request assistance prior to the disciplinary hearing, and did not elect to do so.

The evidence shows that at the time of his preliminary hearing, September 5, 2009, Plaintiff indicated that he would be using his own attorney. (Doc. # 28 Ex. E at 4-6.) This is also indicated as of the hearing date, October 6, 2009. (*Id.* at 7-14.) This is corroborated by Plaintiff's statements made at the disciplinary hearing. In the transcript of Plaintiff's October 6, 2009 disciplinary hearing, DHO Arguello confirmed with Plaintiff that he had reported he was having this case sent to his attorney, Chad Fears, of Snell & Wilmer in Las Vegas. (Doc. # 28 Ex. C at 8:10-16, 13:11-14.) After Plaintiff was found guilty, he said again that he had sent the case to his attorney. (*Id.* at 15:9-24, 16:23-25, 17:1-6.) Plaintiff then stated that he was going to appeal the conviction himself. (*Id.* at 17:7-15.)

The evidence establishes that at no point prior to or during the disciplinary hearing did Plaintiff request legal assistance, even though he was presented with an opportunity to elect to do so. Plaintiff does not argue that the issues were complex, but even assuming Plaintiff's circumstances were sufficiently complex to trigger the right to legal assistance, the evidence indicates that Plaintiff waived his right by stating that he was referring the matter to his own attorney. The court finds Defendants are correct that even if Plaintiff was not being truthful about his ability to retain his own attorney, Defendants were entitled to rely on his representation that he was referring the matter to his attorney. Therefore, summary judgment should be granted as to this claim in Count II.

**4.    There Was No Due Process Violation in the Denial of Plaintiff's Disciplinary Appeal**

Defendants argue there was no due process violation in Warden Smith's denial of Plaintiff's disciplinary appeal. (Doc. # 28 at 12-13.) Plaintiff argues that he does not believe Warden Smith reviewed all of the evidence he submitted in support of his disciplinary appeal. (Doc. # 33 at 1-2.)

Administrative Regulation (AR) 707.04.1.5 outlines NDOC's policy concerning disciplinary appeals. (Doc. # 28 Ex H at18-19.) It provides: "Following a finding of guilt an inmate shall be advised that they may submit one appeal to the Warden using the inmate grievance process outlined in AR 740." (*Id.* at AR 707.04.1.5.1.)

Plaintiff filed his disciplinary appeal on October 11, 2009. (Doc. # 28-3 Ex. F at 4-27, Doc. # 28-4 Ex. F at 1-17.) Warden Smith assessed the bases of Plaintiff's disciplinary appeal as follows: (1) the incident was investigated thoroughly on July 19, 2004; (2) the charge is bogus because he had nothing to do with the substance found in the book; (3) the disciplinary sanctions are wrong, unnecessary, and excessive; and (4) the charges should be dismissed because more than five years had passed since the original incident occurred. (Doc. # 28-4 Ex. F at 18.) Warden Smith made the following findings in his memorandum responding to the disciplinary appeal : (1) Plaintiff was charged with possession of the contraband book, and the charge was dismissed, but new evidence became available regarding possession of a controlled substance and the book was locked in evidence and the chain of evidence not broken. Glue was used to conceal the white powdery substance, which, over time, became exposed and was discovered on August 26, 2009. The substance tested positive for methamphetamine; (2) the chain of evidence was not broken and the property was Plaintiff's prior to being put into evidence; (3) the claim that the sanctions are excessive weighed in Plaintiff's favor because it had been five years since he had the book and he had no other MJ53 charges in his disciplinary history; (4) the request that the charges be dismissed is unreasonable, but the disciplinary sanction of eighteen months and category "A" statutory

14

1 referral do appear excessive. (*Id.*) He ultimately concluded that Plaintiff did not provide enough evidence to refute the finding of guilt, but reduced the sanctions to six months disciplinary sanction, suspended for six months, with no statutory referral. (*Id.*)

An inmate's "claimed loss of a liberty interest in the processing of his appeals does not [amount to a protected liberty interest] because inmates lack a separate constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (citation and quotations omitted). Therefore, Plaintiff has no constitutional claim concerning the denial of his disciplinary appeal.

Even assuming that Plaintiff has a liberty interest in the appeal of his disciplinary determination, the court finds that Defendants are still entitled to summary judgment on this claim. Plaintiff's argument that the appellate review was inappropriate is based purely on his speculation that Defendant Warden Smith did not review all of the evidence presented to him by Plaintiff. This does not equate to evidence of a denial of due process. Instead, the evidence, Warden Smith's memorandum concerning Plaintiff's appeal, establishes that he considered the bases of Plaintiff's appeal, made findings with respect to each of the grounds for appeal set forth by Plaintiff, and reduced the sanctions according to his findings. (Doc. # 28 Ex. F.) Plaintiff's disagreement with Warden Smith's determination does not constitute a due process violation. Accordingly, summary judgment should be granted as to Count III.

### III. PLAINTIFF'S RULE 56(f) MOTION

Plaintiff has filed a motion for discovery under Federal Rule of Civil Procedure 56(f), requesting that the book that is the subject of the 2004 and 2009 disciplinary proceedings be produced in discovery. (Doc. # 38.) Defendants oppose the motion, arguing that Plaintiff fails to explain how the book will create a triable issue of material fact to defeat summary judgment. (Doc. # 41 at 3.) They also argue that the "some evidence" standard is met without

15

1 consideration of the book because Plaintiff was found guilty based on Defendant Tooker's
2 report. (*Id.*) Finally, Defendants assert that Plaintiff is really trying to relitigate his
3 disciplinary hearing. (*Id.* at 3-4.)

4 Courts have "wide latitude in controlling discovery, and its rulings will not be
5 overturned in the absence of a clear abuse of discretion." *Volk v. D.A. Davidson & Co.*, 816
6 F.2d 1406, 1416 (9th Cir. 1987) (internal quotation marks and citation omitted).

> Rule 56(f) provides:
> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) deny the motion;
> (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
> (3) issue any other just order.

Fed.R.Civ.P. 56(f).

To prevail on a Rule 56(f) motion, the moving party "must show (1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *State of California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998). "In making a Rule 56(f) motion, a party opposing summary judgment 'must make clear what information is sought and how it would preclude summary judgment.'" *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998) (quoting *Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1518 (9th Cir. 1987)). The burden is on the party seeking to conduct additional discovery to put forth sufficient facts to show that the evidence sought exists. *Volk*, 816 F.2d at 1416 (citations omitted). As more recently summarized by the Ninth Circuit:

> Under Rule 56(f), the court may postpone ruling on a summary judgment motion where the nonmoving party needs "additional discovery to explore 'facts essential to justify the party's opposition.'" *Crawford-El v. Britton*, 523 U.S. 574, 599, n. 20, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (quoting Fed.R.Civ.Pro. 56(f)). Though the conduct of discovery is generally left to a district court's discretion, summary judgment is disfavored where relevant evidence remains to be discovered, particularly in cases involving confined pro se plaintiffs. *Klingele v. Eikenberry*, 849 F.2d 409, 412 (9th Cir. 1988); *Harris v. Pate*, 440 F.2d 315, 318 (7th Cir. 1971) (Stevens, J.) (observing that the combined disabilities of self representation and confinement hinder a plaintiff's ability to gather evidence). Thus summary judgment in the face of requests for additional

16

> discovery is appropriate only where such discovery would be "fruitless" with respect to the proof of a viable claim. *Klingele*, 849 F.2d at 412.

*Jones v. Blanas*, 393 F.3d 918, 930 (9th Cir. 2004).

Plaintiff's request and motion for production of the book under Rule 56(f) should be denied. While "summary judgment is disfavored where relevant evidence remains to be discovered," *Jones v. Blanas*, 393 F.3d 918, 930 (internal citations omitted), in this case, Plaintiff has not met his burden under Rule 56(f). Plaintiff has not made the requisite showing that production of the book will result in the discovery of facts essential to oppose Defendants' motion. In addition, "[a] party may not forestall an unfavorable ruling on a summary judgment motion merely be alleging fraudulent and/or conspiratorial conduct." *Volk*, 816 F.2d at 1416.

Plaintiff is asserting that his due process rights have been violated in connection with the disciplinary charges and determination in 2009, his right to legal assistance in connection with that proceeding, and the appeal of the disciplinary determination. The court is not tasked with relitigating the 2009 notice of charges or assessing Plaintiff's claim that SCO Tooker falsified the evidence against him in bringing the notice of charges. Instead, the court is only charged with reviewing the record to determine: (1) whether there was "some evidence" to support the disciplinary determination; (2) whether Plaintiff's due process rights were violated as a result of the alleged refusal to provide legal assistance; and (3) the propriety of Warden Smith's determination of Plaintiff's disciplinary appeal. Pursuant to *Hill*, an examination of the entire record is not required, nor is an independent assessment of the credibility of witnesses *or weighing of evidence. Hill*, 472 U.S. at 455. Here, the evidence presented to the hearing officer from Defendant Tooker's report is that he found the book with the crystalline substance in the evidence locker after it had been confiscated from Plaintiff in 2004, and a constant chain of command had been maintained. The court has found this is sufficient to meet the "some evidence" standard. The fact that Plaintiff offered his statement that he did not put the substance in the book does not mean that the hearing officer accepted it as true. Moreover, as the court indicated above, the fact that the substance was found in the book in

the evidence vault makes this case somewhat factually analogous to *Hill*, where the Supreme Court stated that the evidence was sufficient to support the disciplinary finding even though the correctional officer did not actually see which of three inmates assaulted another inmate and only saw three inmates departing the area after hearing a commotion. *Hill*, 472 U.S. at 454-55. Producing the physical evidence that is the subject of the underlying notice of charges will not aid the court in its determination or lead to any facts that are essential to opposing the motion. Because the book is not relevant to the court's inquiry into Plaintiff's current claims, the motion for discovery under Fed.R.Civ.P. 56(f) should be denied.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING** Defendants' Motion for Summary Judgment (Doc. # 28) and **DENYING** Plaintiff's Fed.R.Civ.P. 56(f) Motion (Doc. # 33).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: August 2, 2011.

_____
UNITED STATES MAGISTRATE JUDGE

18